RUTH McHENRY MORRISON, APPELLEE, v: ILLINOIS CENTRAL
RAILROAD COMPANY, APPELLANT.

FILED MARCH 16, 1917.   No. 19145.

1. **Garnishment: JURISDICTION.** The plaintiff, a citizen of Iowa, brought
an action by attachment· and garnishment in this state, alleging
personal injuries sustained in Iowa against the defendant, an Il-
linois corporation; the garnishees both being Illinois corporations.
The testimony examined, discussed in the opinion, and *held*, that
the trial court in the exercise of sound judicial discretion had
jurisdiction to hear and to determine the action.

2. ———: ———. Section 7746, Rev. St. 1913, construed, and *held*,
that a debt owing by the defendant, an Illinois corporation, and
in pursuance of a contractual obligation payable in that state to
an Illinois corporation, may, in a proper case, by attachment and
garnishment commenced in this state, be subjected to the pay-
ment of a debt owing to a resident of Iowa.

APPEAL from the district court for Holt county: ROBERT
R. DICKSON, JUDGE. *Affirmed.*

*Helsell & Helsell* and *William Baird & Sons,* for appel-
lant.

*M. F. Harrington, contra.*

DEAN, J.

This action was begun on October 3, 1914, in the district
court for Holt county by plaintiff against defendant, the
Illinois Central Railroad Company, by attachment and
garnishment. Plaintiff and defendant are both nonresi-
dents of Nebraska, the former being a citizen of Crawford
county, Iowa. The defendant is an Illinois corporation
·with its home office and principal place of business at
Chicago. The suit is for personal injuries sustained by
plaintiff on alighting from one of defendant's coaches at ·
Denison, Iowa, on July 19, 1914, in the course of a trip
made by her and her husband and minor child on that date
from Dow City to Denison, distant ten miles. Plain-
tiff sued to recover $15,100. The jury awarded her a ver-

101 Neb.—4

dict of $7.500. The Chicago, Burlington & Quincy Railroad Company and the Chicago & Northwestern Railroad Company were made garnishees. Both of the garnishees answered, disclosing that they each were severally indebted to defendant in sums respectively in excess of the amount sued for, but they each contend the indebtedness grew out of interstate shipments, and that by the terms of their respective contracts with defendant the debts arising therefrom are severally payable only at Chicago. The court overruled the objections and ordered the garnishees to pay to plaintiff a sufficient amount of money to discharge such sum as plaintiff might recover in the action with attendant costs. The defendant appealed.

Plaintiff in her petition alleged, in substance, that her injuries were brought about because defendant's employees kept the steps of the coach in which she was transported, "with the metallic parts, nails and wood thereof in a negligent, unsafe and dangerous condition. And by reason of this said condition the plaintiff, while attempting to get off said car and while unaided by the defendant or its servants, tripped, fell and was thrown first backward and then downward to the platform owned and maintained by defendant at said Denison." She also charges that defendant's negligence in the premises is intensified from the fact that she had lost her left hand, which was well known to defendant's employees, and that upon alighting from the coach she was entitled to more than ordinary care for that reason.

The petition goes on to charge: "By reason of the carelessness and negligence of defendant and its servants in failing to assist her from said car, she fell and was thrown, and the heel of one of her shoes broken off, and she was first thrown backward and then thrown forward and down and upon a platform of said defendant at said Denison, whereby she sustained the following injuries to wit: Her left foot between the toes and ankle, and in the ankle, were strained and all parts thereof were crushed, bruised, torn and injured, and she was rendered lame in her left foot and leg.

Morrison v. Illinois C. R. Co.

Plaintiff's right hip was crushed, bruised, blackened, torn, and injured, and plaintiff's right side and her back were crushed, torn, lacerated, bruised, blackened, and injured, and her neck was bruised, injured, made lame, and sore. * * * That by reason of said injuries the plaintiff has ever since sustained and ever will sustain great nervousness, and her nervous system has been permanently injured. * * * That plaintiff sustained all of said injuries without fault or negligence on her part."

The defendant answered, generally, reserving and not waiving its special appearance, objecting to the jurisdiction of the court, and pleading: "That the plaintiff is a resident and citizen of Crawford county, Iowa. That the alleged injury complained of * * * is alleged to have occurred at * * * Denison in said Crawford county, Iowa. That the Illinois Central Railroad Company, * * * is a legal corporation * * * of Illinois, having its home office and principal place of business in * * * Chicago." The answer then alleges that the Chicago, Burlington & Quincy Railroad Company and the Chicago & Northwestern Railroad Company, both garnished in this action, are both of them Illinois corporations with their respective home offices and places of business in Chicago, and that the alleged indebtedness owing by both of the companies respectively to defendant consists of liabilities which accrued outside of Holt county and which are payable in Chicago; that defendant never had any railroad line in Holt county, nor agent, nor representative, nor any property in Holt county subject to attachment, and never at any time material to the issues had any debts owing to it in Holt county. "That the attempted attachment and garnishment * * * is an unjust and unlawful abuse of the process of this court. That by reason of the fact that the plaintiff and defendant are both nonresidents of * * * Nebraska and there is no cause or legal or just reason shown why this court should take or assume jurisdiction of this case, it is an unjust abuse of the process and powers of this court in assuming to take and retain jurisdiction of this case and in

requiring this defendant to answer herein, and this court is not required under the rules of comity to take or retain jurisdiction of this case. That assuming and retaining jurisdiction of this case, and compelling this defendant to answer herein, would, if the same should be retained and prosecuted to judgment, deprive this defendant of its property without due process of law and deny to it the equal protection of the law contrary to the provisions of the Constitution of the United States in such cases made and provided." As to the injuries complained of in the petition, defendant pleads a general denial, and prays that the action be dismissed with its costs. The reply is in the usual form denying every allegation of new matter in the answer.

Section 7746, Rev. St. 1913, as amended in 1911 (Laws 1911, ch. 168) is as follows: "PROPERTY AND GARNISHEE BOUND BY ORDER. An order of attachment binds the property attached from the time of service, and the garnishee shall stand liable to the plaintiff in attachment for all property, moneys, and credits in his hands, or due from him to defendant, from the time he is served with the written notice mentioned in section one hundred and eighty-two, notwithstanding the money or debt owing by such garnishee, and which is sought to be attached, may be payable at the place of residence of a nonresident defendant; but where the property is attached in the hands of a consignee, his lien thereon shall not be affected by the attachment."

The 1911 amendment of section 7746 incorporated this language in the body of the act: "Notwithstanding the money or debt owing by such garnishee, and which is sought to be attached, may be payable at the place of residence of a nonresident defendant."

Our attention has not been called to any construction of this statute made since the amendment. There are many citations not applicable to the present case, but to actions arising thereunder before the amendment.

Each of the garnishees has a line of railroad in Holt county, and an office and agent there, so that service can be made upon them in that county. The record shows that

they are indebted to the principal defendant, the Illinois Central Railroad Company. Under section 7746, Rev. St. 1913, such garnishees are "liable to the plaintiff in attachment" for credits in their hands, "notwithstanding the money or debt owing by such garnishee, and which is sought to be attached, may be payable at the place of residence of a nonresident defendant." This gave the court jurisdiction of the garnishees and of their indebtedness to the principal defendant. The defendant insists that the court could not obtain jurisdiction over it, because it had no line of road or other property in Holt county, and made special appearance to insist upon this objection. The defendant, however, appeared so far as to contest the attachment and garnishment, and the court had jurisdiction to apply the credits so garnished in satisfaction of the plaintiff's claim against the defendant. The judgment is not personal against the defendant and affects only the attached liability of the garnishees.

On the merits, both parties introduced considerable testimony, and much of it is in sharp conflict; but the jury as triers of disputed questions of fact having passed upon this feature of the case, we are not disposed to disturb the verdict, there being sufficient testimony to support it. Defendant did not file a motion for a new trial, but filed a "motion in arrest of judgment and to dismiss the action." It is fundamental that a motion in arrest of judgment and to dismiss cannot be made to take the place of a motion for a new trial. Nevertheless, we have considered every point raised by defendant in the motion in arrest of judgment that has been presented in the oral arguments of counsel and in the briefs.

That plaintiff sustained injuries and that there was an accident on the occasion complained of by plaintiff is shown by the testimony that relates to plaintiff's alighting from the train at Denison. She testifies that she was injured because of defects in the steps of the coach, and that in leaving the coach her left foot was caught in one of the steps in such a manner as to throw her down with such

violence as to impart to her the injuries complained of. The left shoe that plaintiff wore at the time of the accident was introduced in evidence and is attached to the record. The lower layer of the heel is detached, and the one immediately above shows that it too, while not detached, was subjected to some strain. The heel is high and so narrow at its lowest point that it would readily protrude through a small opening, such as plaintiff's husband testified he saw in one of the car steps. The plaintiff testified that, when the lower layer of the heel was torn off at the time of the accident, she saw it under the car step and within a foot of the rail, and that it was picked up by one of the trainmen. In this she is corroborated by witness McCarthy, flagman on the train, who was called by defendant, and he testified that he picked up the layer of the heel from the ground under the lower step. Referring to plaintiff, he also testified that he did not "know how she slipped, but she slid down the steps in a sitting position to the platform," and that he assisted her to rise.

The record is voluminous. Approximately 35 witnesses testified, and among them several physicians. It is impracticable to reproduce much of the testimony within the space that should be allotted to an opinion. We deem it sufficient to say that in the state in which we find the record we conclude there is sufficient testimony to sustain the verdict of the jury.

Defendant invokes the rule of comity as a defense, and argues that the case may properly be tried in Iowa, but that it is not triable in this jurisdiction. Counsel argue at length and with much earnestness that the trial court had no jurisdiction of the subject-matter because neither of the parties to the suit are citizens or residents of this state, and because defendant had "no property in Holt county and no debts owing to the defendant in Holt county, and the defendant could not be found in Holt county. * * * The jurisdictional proposition in this case involved the right of attachment and garnishment. And if the court reached nothing by the garnishee process, it is evident that,

as regards the *rem* which represented the subject-matter
on that phase of the case, it acquired no jurisdiction."

Section 2, art. IV of the federal Constitution, viz.: "The
citizens of each state shall be entitled to all privileges and
immunities of citizens in the several states"—has been con-
strued by the supreme court of the United States in the
following cases, among many others: In *Paul v. Virginia,*
8 Wall. (U. S.) 168, Mr. Justice Field, in construing the
privileges and immunities provision of the federal Con-
stitution says: "It has been justly said that no provision
in the Constitution has tended so strongly to constitute the
citizens of the United States one people as this."

In *Mason v. The Blaireau,* 6 Cranch (U. S.) *240, *264,
Marshall, C. J., in discussing the rights of aliens to bring
an action in a court of the United States, says: "On weigh-
ing the considerations drawn from public convenience,
those in favor of the jurisdiction appear much to over-.
balance those against it, and it is the opinion of this court
that, whatever doubts may exist in a case where the juris-
diction may be objected to, there ought to be none where the
parties assent to it."

*Chambers v. Baltimore & O. R. Co.,* 207 U. S. 142, holds:
"The right to sue and defend in the courts of the states is
one of the privileges and immunities comprehended by
section 2, art. IV of the Constitution of the United States,
and equality of treatment in regard thereto does not depend
upon comity between the states, but is granted and pro-
tected by that provision in the Constitution; subject, how-
ever, to the restrictions of that instrument that the limita-
tions imposed by a state must operate in the same way on
its own citizens and on those of other states. The state's
own policy may determine the jurisdiction of its courts and
the character of the controversies which shall be heard
therein."

See *Corfield v. Coryell,* 4 Wash. C. C. 371; *Ward v. Mary-
land,* 12 *Wall.* (U. S.) 418; *Conner v. Elliott,* 18 How. (U.
S.) 591; 11 Cyc. 663, 667; *Eingartner v. Illinois Steel Co.,*
94 Wis. 70; *State v. District Court of Waseca County,* 126

Minn. 501; *Davis v. Minneapolis, St. P. & S. S. M. R. Co.,* 134 Minn. 455.

It seems from an examination of the authorities bearing on the question last discussed herein that the rules pertaining thereto are not immutably fixed. The apparent conflict in the cases arises mainly from the application of local statutes that in terms affect the citizens of all states alike. From the facts appearing in the present case, it was not an abuse of sound judicial discretion for the court to hear and to determine the action, notwithstanding all of the parties and their witnesses were nonresidents of this state. Finding no reversible error in the record, the judgment of the district court is

AFFIRMED.

HAMER, J., concurring separately in part.

I would put in the opinion that it should be the duty of the trial court, before entertaining jurisdiction and preliminary to the trial, that there might be a showing touching the extreme hardship of meeting an action brought in another state than that in which the defendant has its residence. I would do this for the protection of the defendant company because of the fact that a common carrier of passengers and freight works for the public, and if it can be put to great expense in defending itself at a long distance from its residence the business might be impoverished. Witnesses must be gathered up where they can be found, and to take witnesses away 500 to 1,000 miles to testify in a case of this sort is to put a great burden upon the parties, and especially upon the defendant if it should be necessary to render judgment against it. I would not permit the exercise of jurisdiction, except that the court first inquire where the place of trial shall be convenient to the parties, and I would make it ground to reverse the judgment, if there was abuse of discretion upon the part of the trial court in determining the place of trial. By way of illustration, I would say that the little business I have had

as a lawyer could be utterly ruined if I might be sued 1,000 miles away from home, because some one there may be indebted to me.